IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PENNSYLVANIA LAND HOLDINGS )
CORPORATION, a Delaware Corporation, )
)
      Plaintiff, )
)
      v. ) 2:06cv1150
) Electronic Filing
DEBBIE J. MASON, an Adult Individual )
and West Virginia Resident, C. R. Coleman, )
an Adult Individual and West Virginia Residen, )
and NICOLE GAS PRODUCTION, LTD., )
an Ohio Corporation, )
)
      Defendants. )

## **MEMORANDUM ORDER**

AND NOW, this 6th day of August, 2008, upon due consideration of Defendant Nicole Gas Production, Ltd.'s Motion to Set Aside Default Judgment and the parties' submissions in conjunction therewith, IT IS ORDERED that the motion [61] be, and the same hereby is, DENIED.

## FACTUAL BACKGROUND

Pennsylvania Land Holdings Corporation ("PLHC") filed an amended complaint against Nicole Gas Production, Ltd. ("Nicole Gas"), on October 4, 2006, alleging PLHC was denied the opportunity to exercise its right of first refusal to purchase ten (10) natural gas wells ("the Wells") owned by Nicole Gas. Pursuant to an Option Agreement that became effective on March 15, 2000 ("Option Agreement"), PLHC received the exclusive right to purchase certain oil and natural gas wells and leases - including the Wells. In the event of a third party offer to purchase the Wells, PLHC was granted the right to purchase them on the same terms and conditions. PLHC recorded the option agreement.

On January 29, 2004, Nicole Gas sold the Wells to Debbie J. Mason ("Mason"), through the assistance of her husband and agent of Nicole Gas, C.R. Coleman ("Coleman"). Nicole Gas did not notify PLHC of the sale. PLHC learned of the sale in July of 2006 when Coleman contacted PLHC to obtain a written release from the Option Agreement in conjunction with a loan he and his wife were attempting to secure.

PLHC commenced this action in August of 2006 seeking to compel Manson and Coleman to convey the Wells to PLHC. Nicole Gas was served with subpoenas directing it to produce various documents relevant to PLHC's claims. Nicole Gas did not comply with the subpoenas.

On October 4, 2006, PLHC filed an Amended Complaint against Nicole Gas seeking injunctive relief and monetary damages against all parties. The Court issued an Amended Scheduling Order directing defendants to respond to the Amended Complaint by October 23, 2006. Nicole Gas was served with the Amended Complaint on or about October 12, 2006. Freddie Fulson, president of Nicole Gas, signed for the documents provided upon service of process, as well as numerous others during the course of the litigation, including an order voluntarily dismissing defendants Mason and Coleman.

On October 26, 2006, PLHC, moved for an entry of default judgment based on Nicole Gas' failure to respond by the October 23, 2006, answer deadline set by the Court. PLHC sent the Request for Entry of Default to Nicole Gas, which was sent via certified mail by and received by Fulson. On November 2, 2006, the Court held a conference call between counsel for the parties for the purpose of scheduling pretrial deadlines and a date for trial. Although unrepresented by counsel, Fulson participated in this call on behalf of Nicole Gas. On December 14, 2006, more than six weeks after the default had been entered against Nicole Gas, Fulson, who is not an attorney, filed a "Response to the Complaint by PLHC Against Nicole Gas." After filing this Response, Nicole Gas made no recorded effort to ascertain if its request to dismiss the claims had been granted. The response was stricken by the Court on December 20, 2006.     In January,

2007, Fulson agreed to appear for deposition on behalf of Nicole Gas and produce certain documents responsive to the PLHC's Discovery Requests pursuant to the Court's order granting PLHC's Motion to Compel. At the deposition Fulson indicated that Nicole Gas chose not to hire counsel because Fulson believed PLHC's suit to be "frivolous."

On August 14, 2007, PLHC filed a Motion for Default Judgment Against Nicole Gas, and duly served the motion on Nicole Gas. On August 20, 2007, PLHC moved to continue the default judgment hearing and served the motion to Nicole Gas. Fulson received a copy of the motion by certified mail on August 23, 2008. On August 27, 2007, the Court granted PLHC's Motion to Continue and rescheduled the hearing for October 5, 2007. Nicole Gas was sent a copy of the court's order at Nicole Gas' business address, 6264 Sunbury Rd, Westerville, Ohio, 43081.

Nicole Gas did not enter an appearance upon receiving the notices of the scheduled hearing, nor did Nicole Gas seek to set aside the entry of default prior to the default judgment hearing. The hearing commenced on October 5, 2007, and the Court entered a default judgment in the amount of $1,122,000 against Nicole Gas. Two weeks after the issuance of the default judgment Nicole Gas retained counsel and moved to set it aside.

## ANALYSIS

The entry of default may be set aside for "good cause." Fed. R. Civ. P. 55(c). A default judgment may be set aside under Rule 60(b). Id.

Default judgments are generally disfavored in this jurisdiction. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir.1984) ("[T]his court does not favor entry of defaults or default judgments."). "Doubtful cases to be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" Id. (quoting Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir.1951)). But the presumption against default judgments is not to be given controlling weight if doing so would be inconsistent with the Federal Rules of Civil Procedure or the Third Circuit's case law interpreting

3

the Rules.  Budget Blinds, Inc. v. White, --- F.3d ----, ---- 2008 WL 2875349 at *10 (3d Cir. July 28, 2008).

Rule 60(b) contains six subsections pursuant to which a party may be relieved from a final judgment.  Fed. R. Civ. P.  60(b).  Two are potentially applicable here, subsections (b)(1) and (b)(6).

Rule 60(b)(1) provides that a court may relieve a party from judgment where there has been "mistake, inadvertence, surprise, or excusable neglect."  In general, considering whether a default judgment should be set aside under this Rule involves the balancing of the following factors: "(1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a prima facie meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions."  Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987); accord Budget Blinds, Inc., --- F.3d at  ----, 2008 WL 2875349 at *10. Consideration of these factors indicates defendant's motion must be denied.

First, plaintiff expended significant efforts and costs in pursuing this litigation against three defendants and prepared the case for trial in spite of Nicole Gas's decision not to obtain counsel and actively participate in the litigation.  Nicole Gas had several opportunities to become actively involved in defending against plaintiff's claims and made a calculated decision not to retain counsel and defend.  Plaintiff was forced to make strategic decisions about how best to proceed under the circumstances and prepared for trial over the course of several months. Plaintiff prepared for and participated in proceedings before Judge Hardiman regarding plaintiff's motions for temporary and preliminary injunctive relief.  Plaintiff's claims were settled with Mason and Coleman on the record at the conclusion of those proceedings.  Only after plaintiff resolved its claims against the other defendants and the court conducted a hearing and entered a judgment against Nicole Gas did Fulson obtain counsel and attempt to participate actively in the litigation.  Thus, setting aside the default judgment would require plaintiff to prepare to re-litigate matters for a second time years after its first preparation and to re-open or

4

re-evaluate issues that have become final with the other two defendants.  Thus, setting aside the judgment would result in prejudice against plaintiff far beyond that which customarily arises when the entry of default or default judgment recently has been entered.

Second, Nicole Gas has failed to raise a meritorious defense.   A meritorious defense presumptively is established where the "allegations of defendant's answer, if established on trial would constitute a complete defense to the action." Hritz v. Florence Mining Co., 732 F.2d 1178, 1181 (3d Cir. 1984) (quoting Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951)).  In other words,  a defendant's answer must raise factual matters that amount to more than a general denial. United States v. $55,518.05 in United States Currency, 728 F.2d 192, 195 (3d Cir. 1984); Mike Rosen & Associates, P.C. v. Omega Builders, Ltd., 940 F. Supp. 115, 118 (E.D. Pa. 1996).

The basis for defendant's "meritorious defense" is an allegation that plaintiff exercised its right of first refusal under the December 2000 Option Agreement in December of 2002 when Nicole Gas offered to sell the wells to plaintiff.  Nicole Gas contends that when it offered plaintiff the opportunity to buy the Wells it refused to purchase them.  Plaintiff does not dispute this claim.  Defendant argues that this refusal in 2002 constituted a waiver of plaintiff's rights. Therefore, defendant assertedly satisfied the Option Agreement and acquired the unfettered right to sell the Wells to whomever it pleased.  Plaintiff contends that the option could not have matured until Nicole Gas received a bona fide offer to purchase from a third party.  See Blau-Par Corp. V. Reliance Chem. Corp., 170 A.D. 2d 811, 812-13 (N.Y. Sup. Ct. 3d Dep't. 1991). Only upon receiving notification of a bona fide offer from a third party must a holder of a option exercise it or lose the right to purchase. Id.

Defendant's contention that plaintiff  exercised its option in 2002 by refusing to buy the wells is misplaced.  It is settled law that the holder of an option retains it as long as seller does not have offer from bona fide third party purchaser.  Shell v. Hennesy, 639 F. Supp. 626 (D. Mass. 1986).  In Shell, the court specifically held that a plaintiff preserved its right of first refusal

5

under a "lease in spite of its declining to purchase the property earlier, prior to any third party offers." Id.; see also Hewatt v. Leppert, 376 S.E.2d 883 (Ga. 1989) (same). Defendant merely claims plaintiff declined to the purchase the wells. There was no third party offer when the offer was extended to plaintiff in 2002. Two years later, defendant sold the Wells to a third party. There is no allegation that defendant first consulted plaintiff prior to selling the Wells to Mason and Coleman. Under these circumstances plaintiff's right of first refusal did not mature until the bona fide offer was made by a third party, and plaintiff's refusal to purchase the Wells in 2002 had no legal effect on that right. Shell Oil Co., 639 F. Supp. at 628. By failing to allege it notified plaintiff of the bona fide third party offer in 2004, defendant essentially concedes it breached its obligations under the Option Agreement and any contention that plaintiff entered a conspiratorial arrangement with Mason is at best moot.

Additionally, defendant cannot mount a showing of excusable neglect. Defendant asserts its untimely participation in this lawsuit is due to "financial constraints" that prohibited it from hiring counsel. Defendant Motion at ¶ 4. Its position is unavailing.

It is well settled that financial constraint does not in itself constitute excusable neglect. More is required. A party must demonstrate that it exercised reasonable diligence in attempting to secure counsel in order to protect its rights before the tribunal. See Barry Howard and Associates, Inc. v. Indiana Transp. Museum, Inc., 125 F.R.D. 487, 490 (S.D. Ind. 1989) (a claim of financial constraint must be accompanied by a showing of diligent efforts to obtain counsel in order to establish excusable neglect) (citing Allen Russell Pub., Inc. v. Levy, 109 F.R.D. 315, 318 (N.D. Ill.1985)); Greenwood Explorations, Ltd. v. Merit Gas and Oil Corporations, Inc., 837 F.2d 423, 427 (10th Cir. 1988) (upholding rejection of financial hardship claim in obtaining counsel where "the excuses [the defaulting defendants gave] for their behavior. . . [were] merely post hoc rationalizations of indefensible conduct. . . . litigants are not free to appear before the court at their pleasure. They must exercise reasonable diligence in observing the court's rules of procedure.").

Here, defendant's decision not to participate in this litigation was a bit more calculated than its cry of financial poverty suggests.  The record demonstrates that Fulson was served with Plaintiff's Complaint on October 12, 2006, and thereafter Nicole Gas actually received notice of numerous filings by regular and certified mail.  Through Fulson defendant actually participated in an early case management conference.  Fulson filed on behalf of Nicole Gas what he characterized as a motion to dismiss, which the court construed as an answer.  The filing was struck from the record one week after it was docketed.  Fulson never contacted the court to ascertain the status of his filing.   Thereafter, plaintiff filed and the court granted a motion to compel and Fulson was deposed.  Fulson received copies of those documents on behalf of Nicole gas.  At his deposition Fulson indicated he had elected not to hire counsel because in his view plaintiff's lawsuit was frivolous.  Fulson believed plaintiff did not have options on the wells because he was told when he acquired them that they were being given to him free and clear of any liens, options or tie-ins, so he could start his business.  Fulson also elected not to respond to plaintiff's discovery requests because in his view it would be a waste of time.  He believed plaintiff had other and better sources for the documents requested and his time had been consumed by and was better spent in managing other ongoing and more important litigation with Columbia Gas.   Thereafter, Fulson received by certified mail a copy of plaintiff's motion for default judgment.  He intended to participate in that hearing but never contacted the court to advise it of his intentions, nor did he attempt to ascertain the date and time of the hearing.  Thus, the record unequivocally reflects that factors other than financial constraints were taken into account in formulating the litigation strategy utilized by Nicole Gas.

The United States Court of Appeals for the Third Circuit has highlighted the following factors in assessing a defendant's culpable conduct: "1) whether the inadvertence reflected [] incompetence such as ignorance of rules of procedure, 2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, 3) [a party's] failure to provide for a readily foreseeable consequence, 4) a complete lack of diligence or 5) whether

the inadvertence resulted despite [] substantial good faith efforts towards compliance." Dominic v. Hess Oil V.I. Corp., 841 F.2d 513, 517 (3d Cir. 1988). As the above makes clear, defendant's president made a deliberate choice to forgo active participation in the litigation based on his own belief about the merit's of plaintiff's action. He deliberately ignored numerous notices from the court and plaintiff's counsel which provided objective grounds indicating prompt assistance from an attorney was the prudent course of action. He failed to contact the court notwithstanding his awareness that plaintiff had moved for and was seeking to have scheduled a hearing on its motion for default judgment. Such deliberate ignorance of the appropriate procedure, complete lack of diligence, callous disregard for the consequences of the proceedings before this court, and demonstrated intent not to participate in the litigation in any event establish a degree of culpability that rises to the level of "willfulness" and weighs against setting aside the judgment. Hritz, 732 F.2d at 1184 (Certainly "willfulness" and "bad faith" include acts intentionally designed to avoid compliance with court notices." In addition, "[r]eckless disregard for repeated communications from plaintiffs and the court, combined with the failure to investigate the source of a serious injury, can satisfy the culpable conduct standard."); Emcasco Ins. Co., 834 F.2d at 75 (culpable conduct is present where there has been callous disregard for court process and/or the exercise of a deliberate strategy to avoid participation in litigation despite notice and opportunity to do so).

For the reasons set forth above, it is clear that defendant cannot satisfy the requirements for relief under Rule 60(b)(1). It follows *a fortiori* that the record does not reflect the "extraordinary circumstances" needed for relief under Rule 60(b)(6). See Budget Blinds, 2008 WL 2875349 at *8. Consequently, Defendant Nicole Gas' Motion to Set Aside Default Judgment properly has been denied.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc:	Brendan G. Stuhan, Esquire
	Buchanan Ingersoll, PC
	One Oxford Centre, 20th Floor
	301 Grant Street
	Pittsburgh, PA 15219

	Rosa Copeland Miller, Esquire
	Schnader Harrison Segal & Lewis LLP
	2700 Fifth Avenue Place
	120 Fifth Avenue
	Pittsburgh, PA 15222